IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    FUNDS HELD IN CERTAIN U.S. BANK ACCOUNTS,

    Defendant.

---

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

---

The United States of America, by and through United States Attorney Cole Finegan and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2), states:

## JURISDICTION AND VENUE

1.    The United States of America (the United States) has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(C), seeking forfeiture of defendant funds based on violations of the theft of public funds provision 18 U.S.C. § 641, and of wire fraud provisions 18 U.S.C. § 1343 *et seq.* This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2.    Venue is proper under 28 U.S.C. § 1395, as some of the acts described herein occurred in the District of Colorado.

1

## DEFENDANT PROPERTY

3. Defendant property is more fully described as:

a. All funds held in thirty-eight accounts at U.S. Bank ("defendant accounts"), which are more fully described and identified in Attachment A. The funds are currently in the custody of U.S. Bank, totaling approximately $2,091,681.22.

## FACTUAL BASIS FOR FORFEITURE

4. Except as otherwise noted, all of the following facts and information have been discovered through my own investigation, and the observations and investigations of fellow law enforcement officers as reported to me.

## BACKGROUND INFORMATION

5. In June 2020, the United States Secret Service (USSS) Central Florida Cyber Fraud Task Force (CFTF) began an investigation into various accounts at several financial institutions after receiving complaints of fraud in connection with the Small Business Administration's (SBA) Paycheck Protection Program Loan (PPP) and Economic Injury Disaster Loan (EIDL) program.

6. Reports of individuals suspected of submitting fraudulent PPP and EIDL loan applications through the online SBA website utilizing fabricated employment information and/or documentation, or stolen individual and corporate personally identifiable information, were submitted to the USSS by various financial institutions.

7. U.S. Bank identified numerous accounts that had obtained SBA EIDL funds fraudulently based on the following fraud indicators present in the accounts: (1) Newly created accounts with abnormal transaction activity (little to no prior financial transactions) or existing accounts with no activity in past 24 months prior to SBA

deposit, (2) Large SBA loan amounts or deposits with minimal or no other sources of deposits, (3) Inability to positively identify account holders (synthetic or unauthorized accounts); (4) No customer inquiries after funds were frozen; and (5) No proper identification supplied following a customer inquiry after funds were frozen.

## OVERVIEW OF THE CARES ACT

8.  The Coronavirus Aid, Relief, and Economic Security Act ("The CARES Act") is a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. The two sources of funding for small businesses were the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loans (EIDL) program.

9.  The CARES Act and subsequent legislation, enacted between on or about December 27, 2020, and on or about March 11, 2021, allocated billions of dollars in COVID-related EIDL funding. The CARES Act and subsequent legislation also authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic.  In addition, the CARES Act and subsequent legislation authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.

10. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenue for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the

disaster.  In the case of EIDLs for COVID-19 relief, the 12-month period was the period preceding January 31, 2020.  For a business to be eligible for an EIDL, the business must have been in operation before February 1, 2020.  The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

11.   All EIDL applications were submitted online. All applications submitted on July 11, 2020, or after were handled by an SBA contractor with servers located in Des Moines, Iowa. Prior to July 11, 2020, EIDL applications were submitted through three different servers, located in Boydton, VA, West Des Moines, IA, or Quincy, WA. Approval of a loan application and the amount of a loan was based, in part, on the information provided on the application about the number of employees, gross revenue, and cost of goods, as described above. The EIDL loan applications required minimal documentation and information from small businesses to process the loan for approval.

12.   Once an SBA EIDL application is approved, the SBA's Denver Finance Center,[1] located in Denver, Colorado, created payment files and authorized payments of the EIDL funds based on those applications.  The disbursement of the EIDL funds were transmitted by the Financial Management System ("FMS") to the Treasury and then to the recipient's bank account.  The primary server for the FMS is in Sterling, VA. Upon approval of an application for an EIDL or advance, SBA would disburse the funds. EIDL loan proceeds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  The Federal Reserve Bank would send the funds via wire transfer to the

---

[1] Denver Finance Center, OCFO, SBA, 721 19th Street, Suite 373, Denver, CO 80202.

recipient's designated bank account, including the U.S. Bank accounts designated by the perpetrators. U.S. Bank is headquartered at 800 Nicollet Mall, Minneapolis, Minnesota, 55402, and its servers are located primarily in Minneapolis, Minnesota.

13. Law enforcement became aware that unknown individuals appear to be engaged in a scheme to defraud the SBA, a department or agency of the United States, by filing false applications, using "synthetic identities"[2] to create illegitimate or unauthorized financial accounts, and/or using "money mules"[3] with financial accounts in an attempt to conceal the identity, source, and destination of the fraudulently obtained U.S. government funds.

14. On or about August 10, 2020, the Department of the Treasury's Financial Crimes Enforcement Network[4], in partnership with the SBA and the Secret Service, issued an alert, **Detection and Mitigation of Paycheck Protection Program and Economic Injury Disaster Loan Fraud**, to all financial institutions, describing the types of SBA loans (PPP & EIDL), ineligible uses of the loans, fraud indicators, and guidance for returning funds. The alert included several fraud indicators to assist the financial institutions in identifying fraudulent transactions, including:

- False statements on applications
- Fraudulent supporting documents (e.g., payroll, tax forms)
- Identity theft
- Corporate ID theft (shell corporations)
- Misuse of proceeds
- New Employer Identification Numbers (EIN)
- Shell corporations/dormant EINs

---

[2] "Synthetic identities" are created using a combination of real and fictitious or wholly fictitious personally identifiable information (PII) to open illegitimate or unauthorized financial accounts.
[3] "Money mules" are those hired or lured by cybercrime rings to, sometimes unwittingly, move the proceeds of financially motivated cybercrimes from the target country to the perpetrator's home country.
[4] FinCEN oversees and implements policies to prevent and detect money laundering.

- Recent business incorporations
- Large loan amounts
- Newly created and/or multiple accounts with abnormal transaction activity
- Consumer accounts instead of business accounts
- Quick movement of money in and out of accounts (often within 1-2 days)
- Withdrawals made via cash or apps (e.g., CashApp, Zelle, GreenDot)
- Abnormal transaction activity to payment platforms known for poor anti-money laundering controls
- Transfers to overseas accounts known for poor anti-money laundering controls.

15. Based on the fraud indicators utilized by U.S. Bank and outlined in the SBA, USSS, and FinCEN alert, U.S. Bank initially identified approximately 190 accounts, containing SBA EIDL funds, as being either a synthetic account or money mule accounts, or potential fraud. Specifically, U.S. Bank identified these accounts as holding fraudulently obtained SBA EIDL funds based on the identification of some of the following factors present in the accounts: (1) Newly created accounts with abnormal transaction activity (little to no prior financial transactions) or existing accounts with no activity in past 24 months prior to SBA deposit; (2) Large SBA loan amounts or deposits with minimal or no other sources of deposits; (3) Inability to positively identify account holders (synthetic or unauthorized account); (4) No customer inquiries after funds were frozen; and (5) No proper identification supplied following a customer inquiry after funds were frozen.

16. U.S. Bank also, as part of their normal investigative standards for accounts recently established with little to no transaction history, requested additional identification from these 190 account holders. U.S. Bank received little to no response to this request for additional identification from these account holders or inquiry as to why the accounts were frozen. Those that did respond did not provide any identification from the account holders.

17. On or about March 4, 2021, the Secret Service seized approximately 190 U.S. Bank accounts, containing approximately $10,990,352.09 in suspected fraud proceeds. The seizure was based on U.S. Bank's identification and investigation into these accounts, identifying fraud indicators in these 190 accounts. There was only one claim filed contesting the administrative forfeiture of these funds.

18. Subsequent to this seizure warrant, U.S. Bank identified an additional approximately $829,400.00 in suspected fraudulent SBA EIDL funds it had received from on or about June 8, 2020, to on or about July 14, 2020, in approximately 41 accounts. U.S. Bank safeguarded these SBA funds by freezing these accounts.

19. In August 2021, the Secret Service seized these additional 41 U.S. Bank accounts, containing approximately $416,459.81 in suspected fraud proceeds. The seizure was based on U.S. Bank's identification and investigation into these accounts, identifying fraud indicators in these 41 accounts. There was only one claim filed contesting the administrative forfeiture of these funds.

20. Subsequent to the August 2021 seizure, U.S. Bank identified an additional $3,483,400.00 in suspected fraudulent SBA EIDL funds it had received from on or about June 15, 2020, to on or about November 25, 2021, in approximately 38 accounts. U.S. Bank safeguarded these suspected fraudulent SBA funds by freezing these accounts. Nonetheless, a small portion of the funds were withdrawn.

21. As part of its review, U.S. Bank sent each account holder (in Attachment A) of these 38 accounts a letter, regarding the freezing of their account. None of those account holders were able to prove a legitimate interest in the SBA funds. These funds remain frozen and in U.S. Bank's custody.

22. Based on the fraud indicators listed above, U.S. Bank has restrained 38 accounts, containing approximately $2,091,681.22, in SBA EIDL funds as being either synthetic accounts or money mule accounts, or being fraudulently derived, as identified in Attachment A.

## CONCLUSION

23. In summary, there is reasonable cause to believe that all funds held in the U.S. Bank sub-ledger, more specifically identified in Attachment A, constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 641 (theft of public funds) and 18 U.S.C. § 1343 (wire fraud), and are, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

[SIGNATURE PAGE TO FOLLOW]

## VERIFICATION OF RICHARD S. MOCZYDLOWSKI, SENIOR SPECIAL AGENT, UNITED STATES SECRET SERVICE

I, Senior Special Agent Richard S. Moczydlowski, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

_____
Richard S. Moczydlowski
Senior Special Agent
United States Secret Service

FIRST CLAIM FOR RELIEF

1. The Plaintiff repeats and incorporates by reference the paragraphs above.

2. By the foregoing and other acts, defendant "funds from approximately 38 U.S. Bank accounts" constitute or are derived from proceeds traceable to violations of the theft of public funds provision 18 U.S.C. § 641, and wire fraud provisions of 18 U.S.C. § 1343 et seq. Therefore, defendant "funds from approximately 38 U.S. Bank accounts" are forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant property in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED, this 19th day of December 2022.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: _s/ Tonya Andrews_____
Tonya S. Andrews
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: tonya.andrews@usdoj.gov